**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| THE ESTATE OF ALLEN REUBEN, DECEASED<br><br>Plaintiffs,<br><br>v.<br><br>HOPE4CANCER INSTITUTE, LLC, ANTONIO JIMENEZ, MD, and DEWAYNE SMITH PhD, Individually<br><br>Defendants. | Civil Action No.<br><br>3:15-cv-2357-D<br><br>***Jury Trial Requested*** |

**REPLY TO RESPONSE TO MOTION TO DISMISS, ALTERNATIVELY, MOTION FOR A MORE DEFINITE STATEMENT (With Consolidated Brief in Support)**

Defendant, DEWAYNE SMITH, PhD, by and through undersigned counsel, makes this his Reply to the Response [Document 23] to the Motion to Dismiss under Rules 9(b) and 12(b)(6), alternatively for a more definite statement under Rule 12(e) [Document 16] and would show as follows:

1. The Plaintiff has filed an amended pleading stating that this case does not involve a health care liability claim under Chapter 74 of the Texas Civil Practice and Remedies Code. The still defective Third Amended Complaint [Document 22] attempts to couch the complaints as something other than a

health care liability claim in order to avoid the effects of the two-year statute of limitations that would bar Plaintiff's claims. The Plaintiff is mistaken and the case must be dismissed, now without further opportunity to attempt to amend[1].

2. A plaintiff is not permitted to avoid the mandates of the TMLA by recasting a healthcare liability claim as some other cause of action. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 853 (Tex. 2005) (claim based on sexual assault by another patient caused by nursing home's negligence in failing to provide adequate supervision was a healthcare liability claim). "Our prior decisions are to the effect that if the gravamen or essence of a cause of action is a health care liability claim, then allowing the claim to be split or spliced into a multitude of other causes of action with differing standards of care, damages, and procedures would contravene the Legislature's explicit requirements." *Yamada v. Friend*, 335 S.W.3d 192, 197 (Tex. 2010). "Application of the TMLA cannot be avoided by artfully pleading around it

[1] This Plaintiff has been the subject of various *sua sponte* orders to amend the Complaint (see Documents 5 and 7) and still appears either unwilling or unable to properly state a claim.

or splitting claims into both health care liability claims and other types of claims....” *Id.* at 194. “Causes of action that are [health care liability claims] cannot be transmuted to avoid the strictures of the medical liability statute.” *Texas West Oaks Hosp., LP, v. Williams*, 371 S.W.3d 171, 176 (Tex.2012). Thus, when the underlying facts in an action are encompassed by the provisions of the TMLA with regard to a defendant, then all claims against that defendant based on those facts must be brought as health care liability claims. *See Turtle Healthcare Group, L.L.C. v. Linan*, 337 S.W.3d 865, 868–69 (Tex.2011) (holding that ordinary negligence claims against a health care provider could not be maintained separate and apart from health care liability claims when all claims were based on the same underlying facts)

3. In *Cook v. Neely*, 2015 WL 4554286 Tex.App. – 4th Dist, July 29, 2015), not reported, the issue determined by the Court of Appeals was how to determine if a cause of action is a health care liability claim. There, the Court of Appeals in *Cook* looked to whether the allegations would require expert medical testimony to prove the breach of the standard of care; if so, then this was a health care liability claim, *Id.* at *3 citing *Theroux v. Vick*, 163 S.W.3d 111, 113-114 (Tex.App.—San Antonio 2005, pet. denied) (“A cause of action will

be considered a health care liability claim if it is based on a breach of a standard of care applicable to health care providers.”).

4. In *Cook*, because the substance of Cook’s purported fraud claim involved the diagnosis, care, or treatment of the patient, and expert medical or health care testimony was required to prove her allegations, her claim, at its core, was a healthcare liability claim. “We, therefore, conclude the trial court correctly determined that Cook’s purported fraud claim was inseparable from the rendition of medical or health care and could not be recast as a separate cause of action.”, *Cook* at *4.

5. The following allegations from the Third Amended Complaint [Document 22] filed in the instant case show that the plaintiff cannot prove fraud without the use of expert testimony to show that there a) was no stoppage of the cancer’s growth but that the pre-existing cancer caused the death or b) that the patient, Dr. Reuben, died from the cancer (versus, for example, dying from a heart attack or pneumonia due to complications of his condition). Allegations from the Third Amended Complaint [Document 22]:

> 12. . . . Dr. Reuben was promised a cure of his cancer or a stoppage of its growth independently by all three Defendants. This representation was made personally by Antonio Jimenez on or around May 2012. The promise of a cure of his cancer or to at least inhibit the growth of the

> cancer continued during the time that Dr. Reuben began treatment until his death on August 13, 2012. Allen Reuben relied on the false promises to his detriment and was induced to spend money for the cancer treatment.
>
> 13. . . . After receiving false promises regarding the effectiveness of the treatment, Dr. Reuben agreed and received the drug and treatment on or around June 21, 2012. . . . This treatment included the drug developed by Defendant Smith known as the BX Protocol. This treatment of Dr. Reuben lasted until his death on August 13, 2012.
>
> 14. Immediately after the drug was administered, and continuing until his death, Dr. Reuben experienced no change in the growth of the cancer and he died approximately 63 days later. Plaintiff received no benefit from this treatment. The promises and representations of the Defendants were false and were made for the purpose of inducing Dr. Reuben to spend more money for a non-effective treatment.
>
> 22. Plaintiff would further show that Defendants concealed or failed to disclose material facts within the knowledge of Defendants regarding the treatment being administered by the Defendants and that said treatment was ineffective. Defendants knew that Plaintiff did not have knowledge or ability to analyze their promise to cure cancer nor did Plaintiff have equal opportunity to discover the truth. Dr. Reuben was in a compromised, frail condition. Part of his brain had been removed. Eventually he could not talk or walk. Defendants took advantage of his condition and induced Plaintiff to enter into the transaction made the basis of this suit by such concealment or failure to disclose that it would not cure his cancer.

6. TEX.CIV.PRAC. & REM. C. 74.101 states that regardless of the theory of recovery, the only allowable cause of action for representations regarding health care treatment arise as a health care liability claim. If the Plaintiff's claims outside of the TMLA were to survive, it would absolutely eviscerate

the statute – for what patient complaining of an alleged failure in medical treatment, however slight, could not cast his claims as fraud, DTPA or misrepresentation by simply alleging a variation of 'my provider told me I would get better or see results, etc.'. The Plaintiff here has likewise claimed misrepresentations as to the alleged promised efficacy of medical treatment. As such, the DTPA, Fraud and Negligent Misrepresentations claims of the Plaintiff here must be dismissed – the only cognizable claim pleaded is one under Chapter 74 – a health care liability claim and the two-year limitations period of TEX.CIV.PRAC. & REM. C. 74.251(a) applies mandating dismissal as the representations are alleged to have been made between May 2012 and Dr. Reuben's death on August 13, 2012 [Document 22, Paragraph 11] and suit was not filed until July 18, 2015 more than two years later. Even assuming any tolling of a statute until appointment of the executor, the appointment allegedly happened on February 11, 2013 [Document 22, Paragraph 5], and suit was filed more than two years after that even later date.

7. Further, under Rule 9(b), the Third Amended Complaint adds very little specificity. The newest amendment alleges, still without specifics, that Hope4Cancer Institute, LLC, Antonio Jimenez, MD and Dewayne Smith, PhD allegedly (1) promised a cure for Dr. Reuben's brain cancer <u>or</u> (2) promised a

stoppage of the growth of his brain cancer [Document 22, Para. 12]: ***"Dr. Reuben was promised a cure of his cancer or a stoppage of its growth independently by all three Defendants."*** There are no specifics here as to what Defendant Smith is alleged to have done than in prior iterations of the Complaint. The Complaint must be dismissed as the Plaintiff has tried to amend but the failure to do so to allege specifics of DTPA or Fraud mandates the dismissal of these claims.

8. Who: It is *still* not clear in the now Third Amended Complaint [Document 22] as to who made what allegedly fraudulent statements, Dr. Jimenez, an unidentified Hope4Cancer representative, Dewayne Smith, PhD or someone else. It is not clear who the statements were received by, Dr. Reuben or someone else.

9. What: It is unclear what representation is alleged, that a cure for brain cancer was represented, or that a cure for the progress of brain cancer was represented. The specific statement or representation made is not repeated, and without it, the Defendants cannot respond.

10. When: For statute of limitations purposes, the amendment makes the dates of representations clear, whatever the representations might have been. This has been cured by the Third Amended Complaint.

11. Where: It is not clear where any such statements or representations were made – at least not by Smith.

12. How: There is no pleading as to whether these alleged representations were made orally, in person, by phone, by e-mail, in writing or in what other form. Without that, there can be no ability of the Defendants to determine what is being alleged.

13. Rule 9(b) requires specificity, and the Plaintiff has provided almost none. The Third Amended Complaint alleging matters as against Dewayne Smith, PhD must be dismissed under Rules 9(b) and 12(b)(6) for failure to state a claim; the amendments made to the Second Amended Complaint by filing of the Third still allow no room for the Defendants to defend. It is clear no further amendments can or will meet the requirements of Rule 9(b).

14. Further, the allegations in the Third Amended Complaint still do not specify what causes of action are made as to which parties. All the causes of action are made as to all the Defendants. Specificity is required to allow the Defendants to know which claims are being made against them. These matters must be more definitely and specifically pleaded under Rule 12(e) – which causes of action are alleged against which Defendant or Defendants.

CONCLUSION

The claims of the Plaintiff as to Dewayne Smith PhD are subject to dismissal under Rules 9(b) and 12(b)(6). No further amendments can cure the failures in pleading. Dewayne Smith, PhD so prays.

Respectfully submitted,

*/s/ Charles H. Peckham*

Charles H. Peckham
TBN: 15704900
FBN: 15770
cpeckham@peckhampllc.com

Mary A. Martin
TBN: 00797280
FBN: 12272
mmartin@peckhampllc.com

PECKHAM, PLLC
Two Bering Park
800 Bering Drive, Suite 220
Houston, Texas 77057
(713) 574-9044
(713) 493-2255 – facsimile

COUNSEL FOR DEFENDANT
DEWAYNE SMITH, PhD

## CERTIFICATE OF SERVICE

By my signature below, I hereby certify that a true and correct copy of this document was served pursuant to the Federal Rules of Civil Procedure to the following counsel of record, on this the 17th day of March 2016:

Bruce Patton
Attorney at Law
5720 Marquita #11
Dallas, Texas 75206
Telephone: (972) 803-5365
Facsimile: (972) 468-9544
Email: bpattonlaw@gmail.com

**COUNSEL FOR PLAINTIFF**

*/s/ Charles H. Peckham*

Charles H. Peckham